# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBRA WILLIAMS | CIVIL ACTION |
| VERSUS | 21-293-SDD-SDJ |
| BANKERS LIFE & CASUALTY COMPANY and<br>CNO FINANCIAL GROUP, INC. | |

## RULING

This matter is before the Court on the *Motions to Compel Arbitration and to Dismiss or Stay*[1] filed by the Defendants, Bankers Life & Casualty Company ("Bankers Life") and CNO Financial Group, Inc. ("CNO") (collectively "Defendants"). The *Motions* are identical, and this *Ruling* applies to both. Debra Williams ("Plaintiff") filed an *Opposition*[2] to the *Motions*, to which Defendants filed a *Reply*.[3] The Court has considered the arguments of the parties and the law as applied to the facts of this case. For the reasons set forth below, Defendants' *Motions*[4] shall be granted in part and denied in part.

**I.    FACTUAL BACKGROUND[5]**

In 2005, Plaintiff contracted with Bankers Life as an insurance agent.[6] The Agency Agreement that Plaintiff and Bankers Life executed designated her as an independent

---

[1] Rec. Doc. No. 8; Rec. Doc. No. 9.
[2] Rec. Doc. No. 13.
[3] Rec. Doc. No. 15.
[4] Rec. Doc. No. 8; Rec. Doc. No. 9.
[5] These undisputed facts are derived from the filings of the parties.
[6] Rec. Doc. No. 1, p. 4; Rec. Doc. No. 9-1, p. 1; Rec. Doc. No. 8-1, p. 1.

contractor.[7] In 2015, Plaintiff executed an Arbitration Agreement with Bankers Life.[8] In August 2019, Plaintiff was promoted to Unit Field Trainer and began receiving Form W-2 compensation.[9] She was promoted again in October 2019 to the position of Unit Sales Manager.[10] Plaintiff admits that Bankers Life paid her both Form 1099 independent contractor compensation and W-2 employee compensation after her partial transition to a management position.[11] Additionally, Plaintiff asserts, and the record evidence confirms, that Plaintiff had some sort of employee relationship with CNO after her partial transition into management.[12]

Plaintiff maintained the Unit Sales Manager position at Bankers Life until her employment with both Bankers Life and CNO ended in November 2020.[13] Plaintiff filed the instant suit in May 2021, asserting several employment law causes of action against Bankers Life and CNO.[14] Plaintiff's substantive case is not before the Court because Defendants assert that the Court must compel the parties to arbitrate under the Arbitration Agreement.

## II.  LAW AND ANALYSIS

Plaintiff argues that the Arbitration Agreement is invalid, but if it is valid her claims fall outside its scope. Alternatively, Plaintiff argues that she never agreed to arbitrate her claims against CNO. Alternatively, she seeks a jury trial on the issue of arbitrability. The standard applied when considering a motion to compel arbitration under the Federal

---

[7] Rec. Doc. No. 1, p. 4; Rec. Doc. No. 9-1, p. 1; Rec. Doc. No. 8-1, p. 1. The Court does not make the legal finding that she was, in fact, an independent contractor.
[8] Rec. Doc. No. 8-1, p. 2; Rec. Doc. No. 9-1, p. 2; Rec. Doc. No. 13, p. 2.
[9] Rec. Doc. No. 9-1, p. 3; Rec. Doc No. 8-1, pp. 1–3; Rec. Doc. No. 13, p. 3.
[10] Rec. Doc. No. 9-1, p. 3; Rec. Doc No. 8-1, p. 3; Rec. Doc. No. 13, p. 3.
[11] Rec. Doc. No. 13-1, p. 2.
[12] Rec. Doc. No. 13-5, p. 8.
[13] Rec. Doc. No. 9-1, p. 3; Rec. Doc No. 8-1, p. 3; Rec. Doc. No. 1, p. 62.
[14] Rec. Doc. No. 1; Rec. Doc. No. 9-1, p. 3; Rec. Doc. No. 8-1, p. 3.

Arbitration Act ("FAA") is a "'summary judgment-like standard, giving deference to the claims of the non-movant."[15]

### A. Plaintiff is Not Entitled to a Jury Trial on the Issue of Arbitrability

Plaintiff requests a jury trial on the issue of arbitrability. Section 4 of the Federal Arbitration Act provides a limited right to a jury trial "[i]f the making of the arbitration agreement… be in issue…"[16] In this case, the making of the Arbitration Agreement is not in issue. Rather, the issue before the Court is the continued validity of the Arbitration Agreement as to Plaintiff's claims and whether Plaintiff's claims fall within the scope of the Arbitration Agreement. Therefore, Plaintiff is not entitled to a jury trial on the issue of arbitrability.

### B. Motion to Compel Arbitration

In ruling on a motion to compel arbitration, the Court employs a two-part analysis.[17] The Court considers (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute falls within the scope of that arbitration agreement.[18]

#### 1. Validity of the Agreement

The inquiry as to whether a valid agreement to arbitrate exists is governed by ordinary state-law contract principles.[19] Louisiana law conditions the existence of a valid contract on it having a lawful cause, which is "the reason why a party obligates himself."[20]

---

[15] *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. Mar. 21, 2019) (citing *Rain CII Carbon, LLC v. ConocoPhillips, Co.*, No. 09-4169, 2010 WL 148292 (E.D. La. Jan. 11, 2010)).
[16] 9 U.S.C. § 4.
[17] *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F. 3d 295, 302 (5th Cir. 2021).
[18] *Id.* (citing *Will-Drill Res. v. Samson Res.*, 352 F. 3d 211, 214 (5th Cir. 2003)); *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F. 3d 274, 278 (5th Cir. 2019) (citing *Kubala v. Supreme Prod. Serv., Inc.*, 830 F. 3d 199, 201 (5th Cir. 2016)).
[19] *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).
[20] La. Civ. Code art. 1966, 1967.

Plaintiff argues that the lawful cause of the Arbitration Agreement was to provide for arbitration of certain disputes that could arise from the independent contractor relationship between the parties.[21] From the fact that the Agency Agreement executed between Bankers Life and Plaintiff explicitly stated that she was to be considered an independent contractor, Plaintiff extrapolates that the lawful cause of the Arbitration Agreement was solely to govern disputes arising from her work as an independent contractor. Plaintiff urges that she ceased to be an independent contractor in August 2019 when she became an employee of Bankers Life, so the lawful cause of the Arbitration Agreement was extinguished and it was no longer binding during the relevant period.[22]

This Court recently stated the framework for contract interpretation:

> The goal of contract interpretation is to determine the objective common intent of the parties. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Contracts should be interpreted to give effect to each provision. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Specific provisions control over general.[23]

There are two fatal problems with Plaintiff's argument. First, Plaintiff proposes an overly restrictive definition of the word "relationship" that limits the lawful cause of the Arbitration Agreement to a degree not supported by its text. Second, the record evidence before the Court demonstrates that Plaintiff was, in fact, an independent contractor throughout the relevant time period. The Court addresses each in turn.

Section 1.3 of the Arbitration Agreement provides: "This [Arbitration] Agreement does not and shall not be construed to create an employer-employee relationship. The

---

[21] Rec. Doc. No. 13.
[22] Rec. Doc. No. 13, p. 9.
[23] *Excel Contractors, LLC v. APTIM Maint., LLC*, 2021 WL 26790, at *4 (M.D. La. Jan. 4, 2021).

relationship between the [Plaintiff] and [Bankers Life] is an independent contractor relationship."[24] At the time of its execution, the Arbitration Agreement categorized the relationship between the Parties as an independent contractor relationship. The relationship of the parties subsequently changed to include both an independent contractor relationship and an employer-employee relationship. The question is: does the Arbitration Agreement extend to disputes which arose out of the whole relationship? The Court finds that it does.

The "Covered Disputes" section of the Arbitration Agreement is extremely broad. It provides in relevant part:

> The Parties agree that, except as specifically excluded in Section 5.3, the term "Covered Disputes" shall mean any and all legal or equitable claims, actions, controversies or requests for relief of any type, whether asserted or unasserted, now in existence or that may arise in the future, *arising out of or in any way related to or concerning the relationship between the Parties*...."[25]

The word "relationship" as used in the "Covered Disputes" section is clear and unambiguous, and must be given its ordinary meaning. The Court does not deem it appropriate to read "independent contractor relationship" into the "Covered Disputes" provision solely because other parts of the Arbitration Agreement categorize the relationship between the parties as an independent contractor relationship. Instead, the Court interprets the word "relationship" according to its plain meaning, which encompasses all dealings between the parties. As such, it follows that the lawful cause of the Arbitration Agreement was not, as Plaintiff proposes, resolution of disputes arising out of an independent contractor relationship. Rather, the lawful cause was the resolution

---

[24] Rec. Doc. No. 8-2, p. 18.
[25] Rec. Doc. No. 8-2, p. 19–20.

of disputes arising out of the parties' relationship. Therefore, the lawful cause was not extinguished when Plaintiff's independent contractor status morphed into a different relationship. The Agreement remained binding.

But even accepting Plaintiff's proposed definition of "relationship" would not relieve her of her agreement to arbitrate. The second fatal flaw in Plaintiff's argument is that on the record before the Court, the Court must find that Plaintiff remained an independent contractor of Bankers Life even after becoming an employee. In her *Declaration*, Plaintiff suggests that "[t]he fact that I began receiving employee benefits in 2019 reflects that my prior independent contractor status with Bankers Life, which had been referenced in the [Agency Agreement and Arbitration Agreement] had ended or had been modified."[26] She also states that "[w]hen I was promoted into management in August 2019, my status as an independent contractor for Bankers Life ended."[27] But she also asserts that "[a]fter my promotion to management in 2019, my paystubs reflected payments on federal tax Form[] 1099 from Bankers Life as to money I earned as sales revenue from insurance policies that I wrote."[28] She also received compensation reported on Form W-2.[29]

Defendants submitted into evidence Plaintiff's 2019 Form 1099, which expressly states that she was provided nonemployee compensation.[30] Additionally, Stacey Kinnaman, CNO's Human Resources and Payroll Manager, submitted a *Declaration* wherein she explained that "[i]ndependent insurance agents affiliated with Bankers Life are paid commissions based on insurance policies that the agent sells. Such payments

---

[26] Rec. Doc. No. 13-1, p. 2.
[27] *Id.* at 1.
[28] *Id.* at 2.
[29] *Id.*
[30] Rec. Doc. No. 15-2, p. 3.

are taxed as 1099 payments."[31] Stacey Kinnaman also stated that Plaintiff additionally received W-2 compensation during the relevant time period, but she also "continued to sell insurance policies and receive 1099 commission payments after her hire [into a management position]."[32]

The Court finds that Plaintiff was an independent contractor throughout her employment relationship with Bankers Life and CNO. As Plaintiff concedes, she continued to receive 1099 compensation when she wrote insurance policies—just as she had before her partial entry into management. And as Stacey Kinnaman explained, Defendants compensate independent insurance agents with 1099 payments. Based on the record before the Court, the Court finds that in this "summary judgment-like"[33] posture, no reasonable jury could find that Plaintiff's "independent contractor relationship" with Bankers Life terminated during the relevant time period.[34] As such, there is no indication that the parties' "independent contractor relationship" ended when she entered management. Plaintiff's argument that her status as an independent contractor was the lawful cause of the Arbitration Agreement is a stretch, but even if the lawful cause is so construed, Plaintiff remained an independent contractor and thus the lawful cause exists and the Arbitration Agreement applies.

2. Scope of the Agreement

In considering whether a dispute falls within the scope of a valid arbitration agreement, "'the court's analysis is limited.'"[35] This is because under the FAA arbitration

---

[31] Rec. Doc. No. 15-1, p. 2.
[32] Id.
[33] Jackson v. Royal Caribbean Cruises, Ltd., 389 F. Supp. 3d 431, 443 (N.D. Tex. Mar. 21, 2019) (citing Rain CII Carbon, LLC v. ConocoPhillips, Co., No. 09-4169, 2010 WL 148292 (E.D. La. Jan. 11, 2010)).
[34] Insofar as the independent insurance agent component of the relationship was not terminated, but rather added to.
[35] Id. (quoting Kubala v. Supreme Prod. Serv., Inc., 830 F. 3d 199, 202 (5th Cir. 2016)).

is a matter of contract, so courts must enforce arbitration agreements according to their terms.[36]

Plaintiff argues that the instant dispute falls outside of the "Covered Disputes" listed in the Arbitration Agreement.[37] Plaintiff re-urges the argument that the relationship between the parties was defined as an "independent contractor relationship" and because she was no longer an independent contractor at the time her claims arose, her claims do not fall within the definition of a "Covered Dispute."[38] For the reasons provided above, Plaintiff's definition of "relationship" is rejected as an overly restrictive interpretation not supported by the contractual text. Additionally, accepting Plaintiff's definition of "relationship," the relationship did not end for the reasons provided above.

In sum, the Arbitration Agreement between Bankers Life and Plaintiff is a valid arbitration agreement, and her claims fall within the scope of it. Bankers Life's *Motion to Compel* arbitration must be granted. The Court now turns to Plaintiff's alternative argument that there is no agreement to arbitrate between Plaintiff and CNO.

### C. Plaintiff Must Arbitrate Her Claims Against CNO

Plaintiff contends that she cannot be compelled to arbitrate her claims against CNO for two reasons. First, the Arbitration Agreement was only between her and Bankers Life. Therefore, she cannot be compelled to arbitrate her claims against CNO because CNO was not a party to the Agreement.[39] Second, Plaintiff asserts that her claims against

---

[36] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).
[37] Rec. Doc. No. 13, p. 10.
[38] *Id.*
[39] Rec. Doc. No. 13, p. 11–12.

CNO do not fall within the definition of "Covered Disputes" because her claims against CNO do not arise out of the relationship between Plaintiff and Bankers Life.[40]

Defendants point the Court to section 5.1 of the Arbitration Agreement, which states that "Covered Disputes…between the Agent, including the Agent's heirs, representatives, and assigns, and the Company, *including its parent*, subsidiary, affiliate, sister and predecessor entities and the officers and employees of the foregoing entities, shall be subject to binding individual arbitration in accordance with the terms of this Agreement."[41] Plaintiff admits that Bakers Life is a wholly owned subsidiary of CNO.[42] Futehermore, throughout her pleadings Plaintiff jointly refers to CNO and Bankers Life as "Defendants" under each cause of action, effectively treating the entities as one and the same.[43] Therefore, Bankers Life urges that Plaintiff is required to arbitrate her claims against CNO.

It is undisputed that CNO was not a party to the Arbitration Agreement. Therefore, CNO can only claim the benefit of the Arbitration Agreement if it is a third party beneficiary.[44] Under Louisiana law, a contracting party may stipulate a benefit for a third party beneficiary.[45] This type of contract provision is known under Louisiana law as a "stipulation pour autrui."[46] The party asserting a stipulation pour autrui must demonstrate that the following criteria are met: (1) the stipulation for a third party is manifestly clear;

---

[40] Rec. Doc. No. 13, p. 12.
[41] Rec. Doc. No. 8-2, p. 19.
[42] Rec. Doc. No. 13, p. 2.
[43] Rec. Doc. No. 1, p. 75–85.
[44] Third party beneficiaries can enforce arbitration agreements under Louisiana law. *Stadtlander v. Ryan's Fam. Steakhouses, Inc.*, 34,384 (La. App. 2 Cir. 4/4/01), 794 So. 2d 881, 887, *writ denied*, 2001-1327 (La. 6/22/01), 794 So. 2d 790; *Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc.*, 2001-1059 (La. App. 4 Cir. 2/6/02), 812 So. 2d 695, 701
[45] La. Civ. Code art.1978.
[46] *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 2005-2364 (La. 10/15/06), 939 So. 2d 1206, 1211.

(2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee.[47]

The criteria are met in this case. Section 5.1 reflects a clear intention to grant the benefit of mandatory arbitration to CNO. Likewise, that benefit is clearly stated. Finally, the benefit is not incidental to the Arbitration Agreement. The purpose of the Agreement is to require arbitration between the parties to it. A plain reading of section 5.1 extends mandatory arbitration to Bankers Life's "parent." This is a direct benefit to CNO. As such, CNO can avail itself of the mandatory arbitration clause. The Court turns to Plaintiff's second argument.

Plaintiff's second argument is also misplaced. "Covered Disputes" is defined as a dispute "arising out of *or in any way related to* or concerning the relationship between the Parties."[48] To be sure, the Arbitration Agreement defines "the Parties" as Plaintiff and Bankers Life, but it defies logic to assert that the dispute between CNO and Plaintiff does not "in any way relate[] to or concern[]" the relationship between Plaintiff and Bankers Life. Plaintiff alleges that Bankers Life is a wholly owned subsidiary of CNO and is a member of CNO's family of insurance brands.[49] Plaintiff alleges joint actions of CNO and Bankers Life throughout her *Complaint*.[50] Therefore, her dispute with CNO necessarily relates to or concerns her relationship with Bankers Life.

### D. A Stay Pending Arbitration is Appropriate

A stay pending the outcome of the arbitration is appropriate. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for

---

[47] *Id*. at 1212.
[48] Rec. Doc. No. 8-2, p. 20.
[49] Rec. Doc. No. 1, p. 2.
[50] Rec. Doc. No. 1.

such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Therefore, the Court must stay these proceedings.

### III.  CONCLUSION

For the reasons set forth above, Defendants' *Motions Compel Arbitration and to Dismiss or Stay*[51] are GRANTED in part and DENIED in part. The Court grants Defendants' *Motions to Compel Arbitration*, and this suit is stayed pending the outcome of that arbitration. The Court denies Defendants' *Motions* insofar as the Court does not dismiss this suit.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on February 1, 2022.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[51] Rec. Doc. No. 8; Rec. Doc. No. 9.