UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEBRA WILLIAMS

VERSUS

BANKERS LIFE & CASUALTY
COMPANY, ET AL.

CIVIL ACTION

NO. 21-293-SDD-SDJ

# ORDER

Before the Court are two motions to dispose of an arbitration ruling: Motion for Appeal of Arbitration Ruling (R. Doc. 36), and Motion to Vacate Arbitration Ruling (R. Doc. 43), both filed by *pro se* Plaintiff Debra Williams.[1] The Motions are opposed. (R. Doc. 47). For the reasons discussed below, Plaintiff's Motions to Appeal and Vacate Arbitration Award are **DENIED**.

**I.    Background**

Plaintiff filed her Complaint with this Court on May 19, 2021, bringing claims of employment discrimination and retaliation, having exhausted her administrative remedy through the Equal Employment Opportunity Commission. (R. Doc. 1). On July 20, 2021, Defendants brought Motions to Compel Arbitration. (R. Docs. 8 and 9). On February 1, 2022, the Court found the subject arbitration agreement was valid and that Plaintiff's claims fall within its scope. (R. Doc. 28 at 4-8). As such, the Court found that Plaintiff must arbitrate these claims, and that a stay pending the outcome of that arbitration is appropriate. (R. Doc. 28 at 10). A seven-day arbitration hearing concluded on February 21, 2024. (R. Doc. 47 at 2). On May 3, 2024, the arbitrator issued her reasoned award, finding that Plaintiff failed to establish by a preponderance of the evidence

---

[1] As noted in the Minute Entry of July 17, 2024, these two motions will be considered together. (R. Doc. 44 at 1-2).

that Defendants discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964. (R. Doc. 47-1 at 17). On June 26 and July 15, 2024, Plaintiff filed the instant Motions to Appeal/Vacate the arbitration ruling.

## II.   Standard for Vacating Arbitration Awards

The Federal Arbitration Act imposes significant limits on judicial review in order that arbitration will be "efficient and cost-effective" for the parties. *Householder Grp. v. Caughran*, 354 F. Appx 848, 850 (5th Cir. 2009) (quoting *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir.2007)). A court's review of an arbitration award is "exceedingly deferential." *White v. Valero Refin. New Orleans, L.L.C.*, 2013 WL 3154731 at *2 (E.D. La. 2013). Courts should only vacate an arbitration award "on very narrow grounds." *Id.* The moving party bears the burden of proving a court should vacate the arbitration award, but a court must "resolve any doubts or uncertainties in favor of upholding the award." *Id.* An arbitration award must be confirmed unless the court determines the award should be vacated under section 10 of the FAA, which provides the exclusive grounds for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Householder*, 354 F. App'x at 850.

### III.     Plaintiff's Argument

In her two Motions, Plaintiff alleges that the arbitrator erred in her decision by disregarding certain evidence and drawing false conclusions of fact. Plaintiff cites Section 10 of the FAA, setting out grounds for vacating an arbitration award: evident partiality or corruption in the arbitrator, and misconduct of the arbitrator in refusing to hear evidence pertinent to the controversy or any behavior by which the rights of a party have been prejudiced. (R. Doc. 43 at 3).

#### A.     Biased Credibility Determination as to Key Witness

Plaintiff alleges that Branch Manager Kevin Lemmon was responsible for retaliation and created a hostile work environment. (R. Doc. 36 at 5). Plaintiff asserts that during his hearing testimony, Lemmon responded 126 times with answers such as "I don't know", "I don't recall", or "I don't remember". (R. Doc. 36 at 6). Plaintiff argues that the arbitrator's finding that Lemmon's testimony was truthful overlooks substantial evidence and was influenced by bias. (R. Doc. 36 at 7; R. Doc. 43 at 6).

#### B.     Failure to Draw Adverse Inference - Noncompliance with Subpoenas

Plaintiff alleges that two employees of Defendant CNO—working as independent contractors for Bankers Life—witnessed and could have testified to the hostile work environment and retaliation against Plaintiff, but that they did not appear at the hearing despite subpoenas. (R. Doc. 36 at 5). Plaintiff further alleges that these employees, when informed of her promotion, walked out of the room and declared that they did not want to work for a Black woman. (R. Doc. 43 at 4). Plaintiff alleges that Defendants purposely kept these employees from testifying, offering no explanation for not compelling the subpoenaed employees to appear at the hearing. (R. Doc. 36 at 5). Plaintiff argues that the arbitrator's failure to draw an adverse inference from this

noncompliance was erroneous and affected the outcome of arbitration. (R. Doc. 36 at 5; R. Doc. 43 at 5).

### C.  Failure to Consider Evidence of Wrongful Termination

Plaintiff asserts that she provided written evidence of her wrongful termination,[2] alleging that company leadership agreed that she was wrongfully terminated and their intent to "make it right". (R. Doc. 36 at 2). Plaintiff alleges that the arbitrator failed to acknowledge that Plaintiff's employment was terminated and that that termination was wrongful—Plaintiff asserts that this was "erroneous and a misjudgment of facts". (R. Doc. 36 at 3). Plaintiff further asserts that the arbitrator ignored evidence that Plaintiff was disabled as a result of the wrongful termination. (R. Doc. 36 at 3).

### D.  Failure to Consider Evidence of Knowledge of Discrimination

Plaintiff alleges that because Plaintiff failed to include it in the post-hearing brief, the arbitrator disregarded evidence that Territory Vice President Bob Birty was informed of the alleged discrimination against Plaintiff. (R. Doc. 36 at 3). Plaintiff further alleges that Human Resources Director Michelle Fry testified at the hearing that she knew of and did not follow up on Plaintiff's complaints of discrimination; Plaintiff alleges that the arbitrator failed to address this testimony. (R. Doc. 36 at 4). Finally, Plaintiff testified that she spoke with Regional Director Shoemaker and complained of discrimination; despite an alleged total of nearly an hour of phone conversations, Shoemaker testified that he could not remember the content of this conversation. (R. Doc. 36 at 4). Plaintiff asserts that the arbitrator's "ruling in Shoemaker's favor" ignored the unlikelihood

---

[2] According to Plaintiff, after several promotions and an eventual request for transfer to another office, Plaintiff's employment was terminated. Her employment was reinstated at the office where she was transferred, but Plaintiff's EEOC claims assert adverse employment action in her reinstated position.

that he would remember the call but not the content. (R. Doc. 36 at 5). Plaintiff argues that the arbitrator did not consider these pieces of evidence, prejudicing Plaintiff. (R. Doc. 43 at 12).

### E. Failure to Consider Evidence of Discriminatory Practices

Plaintiff alleges that company leadership falsely told her that there was no open position for her to transfer to another office, but that "everyone knew that to be a lie". (R. Doc. 36 at 7). Plaintiff alleges that Human Resources Manager Loos instructed Lemmon "not [to] give [Plaintiff] anything in writing" and to "change the locks of the office so that [Plaintiff] will not be able to get into the building to steal Bankers property". (R. Doc. 43 at 7). Plaintiff further alleges that Regional Director Cooper told Lemmon not to speak to Plaintiff. (R. Doc. 43 at 7). Plaintiff asserts that these actions were retaliation following Plaintiff's report of discrimination. (R. Doc. 43 at 8-9). Plaintiff argues that the arbitrator failed to consider this critical evidence, prejudicing Plaintiff. (R. Doc. 43 at 7).

After reinstatement of her employment at a new office, Plaintiff alleges that she did not receive the full benefits of her position, comparing her benefits and responsibilities to another employee in the same role. (R. Doc. 43 at 9). While Plaintiff argued that fellow Unit Sales Manager Ronald Moore was in substantially the same position—having been transferred to the same office, transfer requests made by the same chain of command, no prior disciplinary infractions, etc.—the arbitrator found that Moore's and Plaintiff's circumstances were too dissimilar for such a comparison. (R. Doc. 43 at 9). Plaintiff argues that the arbitrator's failure to consider this evidence adversely affected the outcome of arbitration. (R. Doc 43 at 11).

IV.    Discussion

    A.    **Evident Partiality - § 10(a)(2)**

The Fifth Circuit has provided that:

"[t]o establish evident partiality based on actual bias, the party urging vacatur must provide specific facts from which '**a reasonable person would have to conclude that the arbitrator was partial to one party**.' This is an 'onerous burden,' because the urging party must demonstrate that the alleged partiality is 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'"

*Victorian v. Valero St. Charles Refinery Valero Refin.-New Orleans, L.L.C.*, 2013 WL 4508005 at *2 (E.D. La. 2013) (citing *Householder*, 354 F. App'x 848) (emphasis added). The cases in which courts have granted vacatur based on "evident partiality" involve some form of relationship between the arbitrator and a party to the arbitration. *Id.* (citing *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 284 (5th Cir.2007) (collecting cases)).

    Here, Plaintiff does not allege that any relationship existed between the arbitrator and Defendants. Her only suggestion of partiality is in her allegation of the arbitrator's failure to draw an adverse inference from Lemmon's testimony that he did not know or did not remember relevant facts. (R. Doc. 36 at 7; R. Doc. 43 at 6). Plaintiff provides no specifics on how the arbitrator's inference of the witness's credibility was influenced by bias. Plaintiff has failed to provide specific facts from which a reasonable person would have to conclude that the arbitrator was partial to one party, and so the Court cannot vacate the arbitration award on the grounds of evident partiality.

    B.    **Refusal to Draw Negative Inference - § 10(a)(3)**

    The adverse witness rule permits a court to draw an inference against a party who failed to call a witness within its control who could testify to material facts. *In re Blanchard*, 1995 WL 696714 at *2 (5th Cir. 1995). "The rule is discretionary and is subject to an abuse of discretion

standard." *Id.* The rule only applies where a party has it peculiarly within his power to produce the witness. *Id.* If the witness is equally available to both parties, any negative inference from one party's failure to call that witness is impermissible. *IberiaBank v. Broussard*, 907 F. 3d 826, 839 (5th Cir. 2018). However, a witness is not "equally available" if he or she is "controlled by one party" and the testimony "would elucidate facts in issue." *United States v. Harvey*, 2019 WL 4280054, at *3 (S.D. Miss. Sept. 10, 2019) (quoting *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970)). Finally, "[t]he court can only draw a negative inference when the missing witness has information 'peculiarly within his knowledge,' … and the strength of the inference to be drawn from the witness's absence varies with the particular facts of each case." *United States v. Wilson*, 322 F.3d 353, 362 (5th Cir. 2003).

Here, the two witnesses at issue were subpoenaed by Plaintiff, and so these witnesses were available to both parties. Furthermore, Defendant argued at the hearing that these witnesses were either no longer employed with Bankers or were independent contractors, neither especially subject to Defendant's control. (R. Doc. 47-2 at 9). Moreover, Plaintiff has not alleged facts indicating that these witnesses had information "peculiarly within [their] knowledge." Rather, the only facts specifically alleged as to these witnesses was their presence in and abrupt departure from a meeting. Plaintiff alleges that Lemmon followed and spoke with these employees; therefore, he could testify as to the specific incident, curing the absence of the particular witnesses. While Plaintiff alleges that these witnesses could attest to the hostile work environment, she does not allege that they were the sole witnesses or have any exclusive knowledge about Plaintiff's work environment. And so the Court finds that the arbitrator's refusal to draw an adverse inference was reasonable and will not vacate the arbitration award on these grounds.

## C. Failure to Consider Critical Evidence - § 10(a)(3)

An arbitrator is not bound to hear all of the evidence tendered by the parties; however, she must give each of the parties to the dispute an adequate opportunity to present its evidence and argument. *Householder*, 354 F. App'x at 851. The arbitrator has "broad discretion to make evidentiary decisions." *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). An evidentiary error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing. *Householder*, 354 F. App'x at 851.

As an initial matter, the arbitration hearing took place primarily over one week, totaling over 35 hours of testimony. (R. Doc. 47-1 at 3). Defendants called none of their own witnesses, because Plaintiff called all relevant witnesses—these were treated at the hearing as Defendants' witnesses as appropriate. (R. Doc. 47-1 at 3). Despite the lengthy hearing, Plaintiff alleges that the arbitrator failed to consider evidence of her wrongful termination, of her employer's knowledge of discrimination against her, and of discriminatory retaliation against Plaintiff.

As to evidence of Plaintiff's termination, while Plaintiff alleges that she requested transfer to a Mississippi branch and was subsequently terminated, the arbitrator's ruling cites Plaintiff's own testimony that she notified her supervisor of the need to relocate and intent to clean out her office but *did not* request information about a job transfer. (R. Doc. 47-1 at 4). And indeed, the arbitrator outlines a series of events leading to Plaintiff's termination even after clarifying that she had not intended to resign.[3] (R. Doc. 47-1 at 5). Here, the arbitrator clearly considered evidence of this termination. Plaintiff's allegation that the arbitrator failed to consider evidence of *wrongful*

---

[3] The termination paperwork was never finalized, but Plaintiff was under the assumption she was fired. The arbitrator acknowledges these facts. (R. Doc. 47-1 at 5).

termination is a question of the weight of the evidence and the merits, and not for this Court to decide.

As to evidence of Defendant's knowledge of discriminatory practices, Plaintiff asserts that Human Resources Director Michelle Fry knew of Plaintiff's letter recounting discrimination against her and did not follow up, respond, nor investigate the information reported in the letter. (R. Doc. 43 at 11-12). But the arbitrator writes in her ruling that "[b]ecause of this letter, Ms. Fry and Mr. Birty had a telephone conversation with Ms. Williams on May 1, 2020." (R. Doc. 47-1 at 14). Plaintiff claims that, based only on Plaintiff's failure to include it in her post-hearing brief, the arbitrator entirely ignores this evidence of Defendants' knowledge of discrimination. On the contrary, the arbitrator addresses these facts in her ruling but finds that Plaintiff's post-hearing brief ultimately failed to support this claim. (R. Doc. 47-1 at 11). Here, Plaintiff does not assert that the arbitrator prohibited material evidence, but instead challenges the arbitrator's weighing of the evidence. Section 10(a) does not provide for vacatur based on the merits of a party's claim, and so the Court cannot vacate the arbitration decision on these grounds.

Finally, as to discriminatory practices, the arbitrator's ruling explains that Plaintiff's post-hearing brief only cites one example of direct evidence of discrimination that established a hostile work environment, alleging that Lemmon stated that two employees walked out of company meeting after announcing the plaintiff's promotion because "they don't want to work for a Black woman." (R. Doc. 47-1 at 10-11). The arbitrator found no evidence indicating that anyone in management condoned the walk out by the two employees. (R. Doc. 47-1 at 11).

Plaintiff does identify some evidence not mentioned in the arbitrator's ruling—namely, Defendant's representation that there was no open position for Plaintiff to transfer, and that Lemmon was instructed to change the locks and not to communicate with Plaintiff following her

initial separation. (R. Doc. 43 at 7). While these are not specifically mentioned in the arbitrator's ruling, the arbitrator does address at length Plaintiff's allegations regarding race and sex discrimination (R. Doc. 47-1 at 7-10) and ultimately concludes that the initial termination was simply poor judgment, not based in race or sex discrimination. (R. Doc. 47-1 at 10). Considering the totality of the evidence considered, the omission of the identified evidence is unlikely to have changed the arbitrator's decision and does not amount to an unfair hearing.[4]

Finally, the arbitrator did not consider Ronald Moore as a comparator for Plaintiff's claim of retaliation, reasoning that Moore can only be a proffered comparator for the sex discrimination claim. (R. Doc. 47-1 at 8). Unlike Plaintiff, Moore received permission to transfer from the managers at his original branch and the transfer branch, never contacted Human Resources, and received a financial package.[5] (R. Doc. 47-1 at 8). None of the decisionmakers at the transfer branch or region were the same when Plaintiff transferred to the same branch. (R. Doc. 47-1 at 8). Plaintiff had an adequate opportunity to present her evidence on these claims, and so the arbitrator's decision not to consider Moore as a comparator in Plaintiff's retaliation claim does not warrant vacatur.

Based on the arbitration ruling, it cannot be said that Plaintiff was deprived of a fair hearing, as she had a more than adequate opportunity to present her evidence and argument. Even if the arbitrator did choose to exclude some evidence, an arbitrator's decision to consider only certain evidence does not warrant vacatur. Furthermore, Plaintiff makes no assertions that the arbitrator deprived Plaintiff of a fair hearing by refusing to hear evidence; rather, Plaintiff's arguments

---

[4] And indeed, the omission from the arbitrator's written ruling is not alone proof that the arbitrator failed to consider this evidence.

[5] "[A]n employee can only serve as a comparator if the employment actions regarding the comparator and the claimant were taken under nearly identical circumstances." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

amount to disagreement on the merits. Challenging the arbitrator's decision on the merits is not an adequate, independent ground for vacatur. *Householder*, 354 F. App'x at 851.

**V.    Conclusion**

For the reasons discussed above, Plaintiff's Motion for Appeal of Arbitration Ruling (R. Doc. 36) and Motion to Vacate Arbitration Ruling (R. Doc. 43) are **DENIED**.

Signed in Baton Rouge, Louisiana, on March 24, 2025.

_____
**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**